UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 CIV 0794**

---

American Civil Liberties Union and the American Civil Liberties Union Foundation,

                    Plaintiffs,

v.

U.S. Department of Justice, including its component the Office of Legal Counsel, U.S. Department of Defense, including its component U.S. Special Operations Command, and Central Intelligence Agency,

                    Defendants.

Civil Action No. _____

**COMPLAINT**



FEB 01 2012
U.S.D.C. S.D. N.Y.
CASHIERS

---

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is a lawsuit seeking the release of records related to the U.S. government's "targeted killing" of U.S. citizens overseas.

2. These targeted killings have been the subject of sustained media coverage. Media reports reveal that at least three American citizens have been killed over the last four months by unmanned aerial vehicles—commonly known as "drones"—on the basis of unilateral decisions made by the executive branch.

3. Media reports about the targeted killing program routinely quote anonymous government officials describing details of the program. High-ranking government officials, including the President of the United States and the Secretary of Defense, have discussed publicly the use of drones and the targeted killing of U.S. citizens.

       Defense, have discussed publicly the use of drones and the targeted killing of U.S. citizens.

4.   For example, in a recent interview, President Barack Obama, referring to the use of drones by the United States to carry out targeted killings, said that "this is a targeted, focused effort at people who are on a list of active terrorists . . . ." Former Central Intelligence Agency Director and current Secretary of Defense Leon Panetta, when asked to describe how the decision was made to order the targeted killing of a U.S. citizen, said that "the President of the United States obviously reviews these cases and reviews the legal justification, and in the end says go or no go."

5.   Despite requests from legal scholars, human rights organizations, members of the media, and elected officials, the U.S. government has not disclosed the process by which it adds names to so-called "kill lists;" the standards under which it determines which Americans may be put to death; or the evidentiary bases on which it concludes that those standards were satisfied in any particular case.

6.   This action is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking injunctive and other appropriate relief, the immediate processing and release of records sought by Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively "ACLU") from Defendants U.S. Department of Justice ("DOJ"), U.S. Department of Defense ("DOD"), and Central Intelligence Agency ("CIA") (collectively "Defendants") through a FOIA request ("Request") made by the ACLU on October 19, 2011.

The Request sought records related to the factual and legal bases for the targeted killing of U.S. citizens.

7. The Request was directed to the DOJ, DOD, and CIA. The Request was also directed at specific components of those agencies, including the DOD's U.S. Special Operations Command ("USSOCOM"), which oversees the Joint Special Operations Command ("JSOC"), and the DOJ's Office of Legal Counsel ("OLC"). The Request sought expedited processing and a fee waiver.

8. Defendants have provided varying responses to the Request, either denying it or delaying a response to it. No agency has released any record in response to the Request. The Defendants have responded inconsistently to the ACLU's request for expedited processing and fee reductions and waivers.

9. The Request relates to a topic of vital importance: the power of the U.S. government to kill U.S. citizens without presentation of evidence and without disclosing legal standards that guide decision makers. Given the momentous nature of the governmental powers that are the subject of the Request, the fullest possible transparency and disclosure is vital.

## Jurisdiction and Venue

10. This Court has subject matter jurisdiction and personal jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B), (a)(6)(E)(iii), 28 U.S.C. § 1331, and 5 U.S.C. §§ 701-706.

11. Venue is premised on the place of business of the ACLU and is proper in this district under 5 U.S.C. § 552(a)(4)(B).

## Parties

12. Plaintiff American Civil Liberties Union is a nationwide, non-profit, nonpartisan organization with more than 500,000 members dedicated to the constitutional principles of liberty and equality. The ACLU is committed to ensuring that the U.S. government acts in compliance with the Constitution and laws, including international legal obligations. The ACLU is also committed to principles of transparency and accountability in government, and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public (in both its raw and analyzed form) is a critical and substantial component of the ACLU's work and one of its primary activities.

13. Plaintiff American Civil Liberties Union Foundation is a separate §501(c)(3) organization that educates the public about civil liberties and employs lawyers who provide legal representation free of charge in cases involving civil liberties.

14. Defendant DOJ is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). One subcomponent of DOJ is the OLC, from which the ACLU has also requested records.

15. Defendant DOD is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). One subcomponent of DOD is USSOCOM, from which the ACLU has also requested records.

16. Defendant CIA is a department of the executive branch of the U.S. government and is an agency within the meaning of 5 U.S.C. § 552(f)(1).

## Factual Background

17. Since at least 2002, the U.S. government has carried out targeted killings overseas using drones and other means. Many of the individuals subjected to targeted killings have been foreign nationals, but media reports have indicated that citizens of the United States have also been killed.

18. Both JSOC and the CIA participate in the targeted killing program.

19. The press began reporting in early 2010 that Anwar al-Awlaki, a U.S. citizen born in New Mexico, had been placed on CIA and JSOC "kill lists" that authorized his targeted killing. In the fall of 2011, the media reported on the existence of a legal memorandum drafted by the OLC ("OLC memo") that provided a legal analysis to support al-Awlaki's killing.

20. On or around September 30, 2011, al-Awlaki was killed in a joint CIA-JSOC drone strike in northern Yemen. American and international news organizations reported that Samir Khan, also a U.S. citizen, was killed in the same attack.

21. On or around October 14, 2011, Abdulrahman al-Awlaki, a U.S. citizen born in Colorado, was killed in a JSOC drone attack in southeastern Yemen. Abdulrahman was sixteen years old.

22. Statements by President Barack Obama confirmed the death of Anwar al-Awlaki and indicated that al-Awlaki was the intended target of the September 30 attack. The President described the killing of al-Awlaki as a "success" that is a "tribute to our intelligence community." On October 25, 2011, the President, describing the attack on al-Awlaki, said "we were able to remove him from the field."

23. Although U.S. government officials, including the President and the Secretary of Defense, have made statements on the record confirming the existence of the targeted killing program, the government has not disclosed the process by which it adds names to so-called "kill lists;" the standards under which it determines which Americans may be put to death; or the evidentiary bases on which it concluded that those standards were satisfied in any particular case.

24. The government has refused to release its legal or evidentiary bases for the September 30 and October 14 strikes. It has not explained whether Samir Khan and Abdulrahman al-Awlaki were killed "collaterally" or were targeted themselves. It has not said what measures, if any, it took to minimize the possibility that individuals not targeted would be killed incidentally.

25. Since the existence of the OLC memo was disclosed in the media, there has been intense and sustained public interest in its contents. Members of Congress and former attorneys in the OLC—including Jack Goldsmith, a former assistant

attorney general who headed the OLC—have urged that the OLC memo or the legal reasoning it contains be released to the public.

26. The former legal adviser to the U.S. Department of State in the Bush Administration, John B. Bellinger III, said that it is "important to domestic audiences and international audiences for the administration to explain how the targeting and killing of an American complies with applicable constitutional standards."

27. Peter Hoekstra, former U.S. representative and former chair of the House Select Committee on Intelligence, has said that "the targeting of Americans—it is a very sensitive issue, but again there's been more information in the public domain than what has been shared with this committee. There is no clarity. Where is the legal framework?"

28. Senator Carl Levin, chair of the Senate Armed Services Committee has said, "I would urge them to release the memo. I don't see any reason why they shouldn't."

29. Senator Dianne Feinstein, chair of the Senate Select Committee on Intelligence, called on the administration to "make public its analysis on counterterrorism authorities" because "for transparency and to maintain public support of secret operations, it is important to explain the general framework for counterterrorism actions."

## The ACLU's FOIA Request

30. On October 19, 2011, the ACLU submitted a FOIA request for records related to the "legal authority and factual basis for the targeted killing" of al-Awlaki, Abdulrahman, and Khan. The Request was submitted to the designated FOIA offices of the DOJ, DOD, CIA, USSOCOM, and OLC.

31. The Request seeks expedited processing on the basis of a "compelling need" for these records because the information is urgently needed by an organization primarily engaged in disseminating information in order to inform the public about actual or alleged Federal Government Activity. *See* 5 U.S.C. § 552(a)(6)(E)(v); *see also* 28 C.F.R. § 16.5(d)(1)(ii); 32 C.F.R. § 286.4(d)(3)(ii); 32 C.F.R. § 1900.34(c)(2). In addition, the records relate to a "breaking news story of general public interest." 32 C.F.R. § 286.4(d)(3)(ii)(A); *see also* 28 C.F.R. § 16.5(d)(1)(iv).

32. The Request seeks a waiver of search, review, and duplication fees on the basis that disclosure of the requested records is in the public interest because it "is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); *see also* 28 C.F.R. § 16.11(k)(1); 32 C.F.R. § 286.28(d); 32 C.F.R. § 1900.13(b)(2). The Request seeks the waiver also on the basis that the ACLU constitutes a "representative of the news media" and that the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); *see also* 32 C.F.R. § 286.28(e)(7); 32 C.F.R. § 1900.13(i)(2); 28 C.F.R. § 16.11(d).

## The Government's Response to the FOIA Request

33. On October 27, 2011, the DOJ Office of Information Policy granted the ACLU's request for expedited processing. The DOJ also determined that the Request fell within "unusual circumstances" and informed the ACLU that it would not be able to respond to the Request within the statutory deadline. The DOJ deferred determination of whether the ACLU qualified for a fee waiver.

34. No further response or correspondence has been received from the DOJ. No records responsive to the Request have been released by the DOJ.

35. On October 31, 2011, the DOD denied the ACLU's request for expedited processing, determined that the Request fell within "unusual circumstances," and extended the time limit to respond to the Request. The DOD also denied the ACLU's request for a limitation of fees based on its status as a representative of the news media and failed to address the request for a public-interest fee waiver.

36. By letter dated December 16, 2011, the ACLU timely filed an administrative appeal of the DOD's determinations. The ACLU urged the appellate authority to expedite processing and grant the requested fee waivers.

37. On December 27, 2011, the DOD indicated that it was unable to process the administrative appeal within the statutory timeframe. No further response or correspondence has been received from the DOD. No records responsive to the Request have been released by the DOD.

38. By letter dated November 17, 2011, the CIA stated that the Request "is denied pursuant to FOIA exemptions (b)(1) and (b)(3)." The CIA stated that the "fact of the existence or nonexistence of requested records is currently and properly classified" and protected from disclosure.

39. By letter dated December 6, 2011, the ACLU timely filed an administrative appeal of the CIA's determination. The ACLU urged the appellate authority to reconsider its denial of the Request on the basis that the denial was overbroad and impermissible under FOIA.

40. By letter dated January 18, 2012, the CIA indicated that it would be unable to respond to the administrative appeal within the statutory timeframe. No records responsive to the Request have been released by the CIA.

41. On November 7, 2011, USSOCOM denied the ACLU's request for expedited processing, determined that the Request fell within "unusual circumstances," and extended the time limit to respond to the Request. The DOD also denied the ACLU's request for a limitation of fees based on its status as a representative of the news media and failed to address the request for a public-interest fee waiver.

42. By letter dated December 16, 2011, the ACLU timely filed an administrative appeal of USSOCOM's determinations. The ACLU urged the appellate authority to expedite processing and grant the requested fee waivers.

43. By letter dated December 27, 2011, the DOD appellate authority responsible for processing FOIA appeals for DOD component agencies, including USSOCOM,

> indicated that it would be unable to process the administrative appeal within the statutory timeframe. No records responsive to the Request have been released by USSOCOM.

44. By letter dated November 14, 2011, the OLC denied the Request pursuant to FOIA exemptions (b)(1), (b)(3), and (b)(5). The OLC stated that it "neither confirms nor denies the existence of the documents described in your request."

45. By letter dated December 6, 2011, the ACLU timely filed an administrative appeal of the OLC's determination. The ACLU urged the appellate authority to reconsider its denial of the Request on the basis that the denial was overbroad and impermissible under FOIA.

46. No further response or correspondence has been received from the OLC. No records responsive to the Request have been released by the OLC.

## Causes of Action

47. Defendants' failure to make a reasonable effort to search for records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3), and Defendants' corresponding regulations.

48. Defendants' failure to promptly make available the records sought by the Request violates the FOIA, 5 U.S.C. § 552(a)(3)(A), and Defendants' corresponding regulations.

49. The failure of the DOD to grant the ACLU's request for expedited processing violates the FOIA, 5 U.S.C. § 552(a)(6)(E) and the DOD's corresponding regulations.

50. The DOD's failure to grant the ACLU's request for a limitation of fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II) and the DOD's corresponding regulations.

51. The failure of the DOD to grant the ACLU's request for a waiver of search, review, and duplication fees violates the FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and the DOD's corresponding regulations.

## Prayer for Relief

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Order Defendants immediately to produce all records responsive to the Request;

B. Enjoin Defendants from charging Plaintiffs search, review, or duplication fees for the processing of the Request;

C. Award Plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

D. Grant such other relief as the Court may deem just and proper.

Dated: February 1, 2012

DORSEY & WHITNEY LLP

By: ______________________
Joshua Colangelo-Bryan

51 West 52nd Street
New York, NY 10019-6119
212-415-9234

Eric A.O. Ruzicka (*pro hac vice* application pending)
Colin Wicker (*pro hac vice* application pending)
Michael Weinbeck (*pro hac vice* application pending)

50 South Sixth Street
Minneapolis, MN 55402-1498
612-340-2959

Attorneys for Plaintiffs

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

Jameel Jaffer
Hina Shamsi
Nathan Freed Wessler

125 Broad Street, 18th Floor
New York, NY 10004
212-549-2500

Attorneys for Plaintiffs