UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THE NEW YORK TIMES COMPANY, et al., | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 11-9336 |
| v. | ) ) |
| DEPARTMENT OF JUSTICE, | ) ) ) |
| Defendant. | ) ) |

|  |  |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 12-0794 |
| v. | ) ) |
| DEPARTMENT OF JUSTICE, et al., | ) ) ) |
| Defendants. | ) ) |

**DECLARATION OF JOHN F. HACKETT,
CHIEF OF THE INFORMATION AND DATA MANAGEMENT GROUP,
THE OFFICE OF THE CHIEF INFORMATION OFFICER,
OFFICE OF THE DIRECTOR OF NATIONAL INTELLIGENCE,**

Pursuant to 28 U.S.C. § 1746, I, John F. Hackett, declare the following to be true and correct:

1.  I am the Chief of the Information and Data Management Group for the Office of the Director of National Intelligence

("ODNI").  I have held this position since April 2006.  Prior to my arrival in the ODNI, I held similar positions in the National Counterterrorism Center and its predecessor, the Terrorist Threat Integration Center.  In this capacity I am the final decision-making authority for the ODNI Information and Data Management Group, which receives, processes, and responds to requests for ODNI records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

2.   In addition, I have TOP SECRET original classification authority delegated to me by the Director of National Intelligence ("DNI") pursuant to Section 1.3 of Executive Order 13526.  I am authorized, therefore, to conduct classification reviews and to make original classification and declassification decisions.

3.   I make the statements herein on the basis of my personal knowledge as well as on information made available to me in the course of performing my official duties.

A.   ODNI Background

4.   Congress created the position of the DNI in the Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, §§ 1011(a) and 1097, 118 Stat. 3638, 3643-63, 3698-99 (2004) (amending Sections 102 through 104 of Title I of the National Security Act of 1947).  Subject to the authority, direction, and control of the President, the DNI serves as the

2

head of the United States Intelligence Community and as the
principal advisor to the President and the National Security
Council for intelligence matters related to the national
security.  50 U.S.C. §§ 403(b)(1), (2).

5.  The responsibilities and authorities of the DNI are set
forth in the National Security Act of 1947, as amended.  These
responsibilities include ensuring that national intelligence is
provided to the President, heads of the departments and agencies
of the Executive Branch, the Chairman of the Joint Chiefs of
Staff and senior military commanders, and the Senate and House
of Representatives and committees thereof, and to such other
persons as the DNI determines to be appropriate.  50 U.S.C. §
403-1(a)(1).  The DNI is charged with establishing the
objectives of; determining the requirements and priorities for;
and managing and directing the tasking, collection, analysis,
production, and dissemination of national intelligence by
elements of the Intelligence Community.  50 U.S.C. §§ 403-
1(f)(1)(A)(i) and (ii).

6.  In addition, the National Security Act of 1947, as
amended, states that "[t]he Director of National Intelligence
shall protect intelligence sources and methods from unauthorized
disclosure."  50 U.S.C. § 403-1(i)(1).  Consistent with this
responsibility, the DNI is authorized to establish and implement
guidelines for the Intelligence Community for the classification

3

of information under applicable law, Executive Orders, or other Presidential Directives and for access to and dissemination of intelligence.  50 U.S.C. §§ 403-(i)(2)(A), (B).

7.  Finally, the National Security Act of 1947, as amended, created an Office of the Director of National Intelligence.  The function of this Office is to assist the DNI in carrying out the duties and responsibilities of the Director under the Act and other applicable provision of law, and to carry out such other duties as may be prescribed by the President or by law.  50 U.S.C. §§ 403-3(a),(b).

### B.  Plaintiffs' FOIA requests

8.  I am submitting this declaration in support of the Government's motion for summary judgment in these proceedings. Through the course of my official duties I have become familiar with these civil actions and the underlying FOIA requests. Although ODNI is not a defendant in this case, due to the nature of the information at issue and the fact that the relevant components of DOJ do not have officials who are original classifying authorities, I will be addressing the Department of Justice's (DOJ) handling of the classified records it located in response to the FOIA requests described below to the extent possible in a public unclassified document.  The court is respectfully referred to the classified ex parte

4

declarations also being filed today for a more detailed discussion of these matters.

9.   I understand that on or about June 11, 2010, New York Times reporter Scott Shane submitted a FOIA request to DOJ's Office of Legal Counsel (OLC) seeking "[a]ll Office of Legal Counsel opinions or memoranda since 2001 that address the legal status of targeted killing, assassination, or killing of people suspected of ties to Al Qaeda or other terrorist groups by employees or contractors of the United States government.  This would include legal advice on these topics to the military, the Central Intelligence Agency or other intelligence agencies.  It would include the legal status of killing with missiles fired from drone aircraft or any other means."  In response OLC acknowledged the existence of one responsive classified legal memorandum pertaining to the Department of Defense but advised that it could not confirm or deny the existence of any additional responsive documents pursuant to FOIA Exemptions 1 and 3 (a "Glomar" response).

10.   I am also aware that on or about October 7, 2011, New York Times reporter Charlie Savage submitted a FOIA request to OLC for "[a]ll Office of Legal Counsel memorandums analyzing the circumstances under which it would be lawful for the United State armed forces or intelligence community assets to target for killing a United States citizen who is deemed a terrorist."

5

OLC interpreted the request as seeking records pertaining to Anwar al-Aulaqi and provided a Glomar response pursuant to FOIA Exemptions 1 and 3.

11.  I am aware that on or about October 19, 2011 plaintiff American Civil Liberties Union Foundation (ACLU) submitted a FOIA request to OLC seeking all records "pertaining to the legal basis in domestic, foreign, and international law upon which U.S. citizens can be subjected to targeted killings" and "the process by which U.S. citizens can be designated for targeted killings, including who is authorized to make such determinations and what evidence is needed to support them," as well as a variety of records related to three individuals alleged to have been targeted, Anwar al-Aulaqi, Samir Khan, and Abdulrahman al-Aulaqi.  OLC responded to the ACLU with a Glomar response pursuant to FOIA Exemptions 1 and 3.  (The administrative processing of the ACLU and New York Times requests is further described in the unclassified declaration of John E. Bies, Deputy Assistant Attorney General, OLC, which also attaches the relevant correspondence.)

12.  On or about October 19, 2011 DOJ's Office of Information Policy (OIP) received the same request from the ACLU described above.  OIP did not provide a response to this request prior to the filing of this lawsuit but has since completed the processing of this request.  (The administrative processing of

6

this request is further described in the declaration of Douglas
R. Hibbard, Deputy Chief of the Initial Request Staff, OIP, DOJ,
which also attaches the relevant correspondence.)

13.  While OLC previously provided a Glomar response to
these requests there have been a number of developments that
have resulted in a determination that OLC and OIP can now
publicly acknowledge that they possess documents responsive to
the ACLU FOIA request.  However, as will be explained further
below, OLC and OIP cannot provide further information about
those records, including the number, nature, or a categorization
of the responsive records, without disclosing information
protected by FOIA Exemptions 1 and 3.

14.  In addition, I have reviewed the content of the
documents located by DOJ and have determined that they contain
information that is currently and properly classified and/or
consists of intelligence sources and methods information and is
therefore exempt from disclosure pursuant to FOIA Exemptions 1
and 3.

C.  FOIA Exemption 1

15.  Exemption 1 of the FOIA protects from release matters
that are specifically authorized under criteria established by
an Executive Order to be kept secret in the interest of the
national defense or foreign policy and are in fact properly
classified pursuant to such Executive Order. 5 U.S.C. 552(b)(1).

7

The current Executive Order, which establishes such criteria, is Executive Order 13526.

16.   Section 1.1 of Executive Order 13526 provides that information may be originally classified under the terms of the order if: 1) an original classification authority is classifying the information; 2) the information is owned by, produced by or for, or is under the control of the U.S. Government; 3) the information falls within one or more of the categories of information listed in section 1.4 of the Executive Order; and 4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, and the original classification authority is able to identify or describe the damage.

17.   Section 1.2(a) of Executive Order 13526 provides that information shall be classified at one of three levels. Information shall be classified at the Top Secret level if its unauthorized disclosure reasonably could be expected to cause exceptionally grave damage to the national security. Information shall be classified at the Secret level if its unauthorized disclosure reasonably could be expected to cause serious damage to the national security.  Information shall be classified at the Confidential level if its unauthorized

8

disclosure reasonably could be expected to cause damage to the national security.

18.   In addition, information shall not be considered for classification unless it falls within one of the categories described in Section 1.4 of Executive Order 13526.  The relevant categoreis for purposes of this case are Sections 1.4(c) and 1.4(d).  Section 1.4(c) allows information to be classified if it pertains to "intelligence activities (including covert action), intelligence sources or methods, or cryptology."  Section 1.4(d) allows information to be classified if it pertains to "foreign relations or foreign activities of the United States, including confidential sources."

D.   FOIA Exemption 3

19.   Exemption 3 of the FOIA provides that FOIA does not apply to matters that are specifically exempted from disclosure by statute, provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.  5 U.S.C. § 552(b)(3).

20.   Section 102A(i)(1) of the National Security Act of 1947, as amended, 50 U.S.C. § 403-1(i)(1) states that the "the Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."  The sources

9

and methods provision of the National Security Act has long been held to qualify as an Exemption 3 statute.  In contrast to information witheld pursuant to Exemption 1, agencies are not required to identify and describe the damage to national security that reasonably could be expected to result from the unauthorized disclosure of these sources and methods.  Agencies are only required to establish that the withheld information constitutes intelligence sources and methods.

### E.   DOJ's "No Number/No List" response

21.  I have reviewed the classified records located by DOJ in response to the ACLU's FOIA request, as well as the other unclassified and classified ex parte declarations being submitted in support of the Government's motion for summary judgment.  In light of the U.S. Government's recent official disclosures in the speeches given by the Attorney General on March 5, 2012 and the Assistant to the President for Homeland Security and Counterterrorism on April 30, 2012 the defendants in this case can now publicly confirm the existence of records responsive to ACLU's request without harming national security. However,  given the subject matter of the ACLU's request, which includes, among other things, a request for records pertaining to "the legal basis . . . upon which U.S. citizens can be subjected to targeted killings," DOJ cannot provide any details about the records that were located, including the volume, dates

10

or nature of those records.  Although DOJ can confirm generally
the existence of records relating to the broad topics addressed
in the ACLU's request, including records related to the Attorney
General's speech which addressed legal issues pertaining to the
potential use of lethal force against U.S. citizens, any further
disclosure related to the classified records located by DOJ
would harm national security and should be protected pursuant to
FOIA Exemptions 1 and 3.

22.  To provide detailed information about the volume and
nature of the classified documents located by DOJ would reveal
classified information about the nature and extent of the U.S.
Government's classified counterterrorism activities.  DOJ also
cannot disclose whether or not the responsive records they
located correlate to the specific subparts of the ACLU's
request.  Providing such details would tend to reveal the very
information that is being protected in this case.  This
information constitutes currently and properly classified
information concerning intelligence sources, methods and
activities, as well as information related to the foreign
activities of the United States.  Disclosure of this information
reasonably could be expected to result in damage to the national
security, up to and including exceptionally grave damage, and is
therefore properly protected from disclosure pursuant to FOIA
Exemption 1.  This information also consists of intelligence

11

sources and methods that is protected by the National Security
Act and therefore exempt from disclosure pursuant to FOIA
Exemption 3.

23.  As described in the declaration of John Bennett,
Director of the National Clandestine Service of the CIA, the CIA
is similarly unable to provide further information about the
number and nature of the records it located because such
information would reveal information about intelligence
activities, intelligence methods, and CIA functions.  Were the
CIA to publicly acknowledge that it possessed a significant
number of documents responsive to the ACLU's FOIA request, that
would indicate CIA interest in either actual or contemplated
operations against U.S. citizens who are senior operational
leaders of al-Qaeda, which in turn would reveal CIA involvement
in these activitites or that the CIA itself has authority to use
lethal force against such individuals.  On the other hand, if
CIA acknowledged that it did not have any documents, that would
reveal a lack of interest or authority.

24.  Similarly, were DOJ to acknowledge that it located a
large volume of classified records responsive to the ACLU
request, that would tend to indicate that an entity of the U.S.
Government was involved in the lethal targeting activities that
are the subject of the request, since if a U.S. Government
entity had been granted the authority to carry out lethal

12

operations against U.S. citizens it would be logical that the
legal issues related to such operations would be extensively
documented.  Again, on the other hand, a small amount of
material would indicate that no authority had been granted, or
possibly that the issue had not been raised with DOJ and
therefore was not being considered.  In particular, whether or
not OLC has a large number of responsive documents would also
indicate whether or not OLC has provided formal written advice
regarding the subjects of the request.  This, in turn, would
tend to reveal whether or not the U.S. government was
contemplating certain actions, because OLC generally provides
legal opinions only when there is some practical need for the
advice.  *See* Memorandum for Attorneys of the Office from David
J. Barron, *Re:  Best Practices for OLC Legal Advice and Written
Opinions*, at 3, available at http://www.justice.gov/olc/pdf/olc-
legal-advice-opinions.pdf ("OLC generally avoids providing a
general survey of an area of law or issuing broad, abstract
legal opinions.  There should [] be a practical need for [a]
written opinion.").  Information revealing the depth and breadth
of the U.S. Government's efforts to counter the threat posed by
U.S. citizens who are senior operational leaders of al-Qaeda, as
well as public confirmation that the U.S. Government was
involved in the circumstances that led to the deaths of Anwar
al-Aulaqi, Samir Khan and Abdulrahamn al-Aulaqi, would greatly

13

benefit terrorist organizations and other foreign adversaries
both in operationally responding to U.S. counterterrorism
activities as well as in recruiting new terrorists into their
ranks.

25. The unclassified CIA declaration submitted today
details the CIA's concerns with the potential disclosure of the
volume and nature of the CIA records that were located in this
matter, including the potential harm to intelligence source
relationships, intelligence methods, intelligence activities,
and the foreign relations and foreign activities of the United
States.  All of those concerns are equally applicable to the
records located by DOJ and I hereby incorporate by reference the
Bennett declaration.  To publicly disclose the volume of
classified records DOJ located in response to the various
sections of the ACLU's request would reveal information about
the existence and identity of intelligence sources, possibly
including liaison services in the region (or lack of such
sources).  For example, the existence of a signficant amount of
information related to the "facts supporting a belief that al-
Awlaki could not be captured or brought to justice using
nonlethal means" would reveal that CIA had been successful in
collecting information, while an assertion that there is no
information on this topic would reveal the opposite.

26.   The ACLU's request also implicates intelligence methods and activities which must be protected in order to prevent terrorist organizations or foreign adversaries from taking countermeasures to avoid those methods.  We know that terrorist organizations have the capacity and ability to gather information from a variety of sources and analyze it in order to ascertain the means and methods of foreign intelligence collection efforts aimed at disrupting their activities. Disclosing the amount and character of the classified information DOJ located in response to various sections of the ACLU's request would reveal details about the U.S. Government's counterterrorism efforts and its success or lack of success in gathering intelligence information related to the matters addressed in the ACLU request.

27.   The ACLU's request also clearly implicates the foreign relations and foreign activities of the United States.  For example, to confirm that DOJ has a significant amount of classified records relating to "the legal basis . . . upon which U.S. citizens can be subjected to targeted killings, whether using unmanned aerial vehicles. . .or by other means" or relating to "the process by which U.S. citizens can be designated for targeted killing" could confirm that an agency of the U.S. Government has requested advice on this topic and is intending to engage in such activities.  Such confirmation could

cause harm to U.S. relations with foreign governments with known or suspected U.S. citizen terrorists within their borders. Furthermore, any confirmation regarding whether the U.S. Government was involved in the deaths of the individuals named in the FOIA request could harm U.S. foreign relations by potentially disclosing whether the U.S. is operating clandestinely inside other countries' borders, which could cause those countries to respond in ways that could harm U.S. national interests.

28.  Finally, if all of the defendants in this matter -- DOJ, CIA and the Department of Defense -- were to provide the volume, dates, authors and other information about the classified records located which is typically included in agency Vaughn indexes, our adversaries would have significant information about U.S. Government counterterrorism activities in recent years at their fingertips.  The indexes could reveal that a particular agency had a significant interest in one of the individuals named in the request at a particular time.  This would provide a timeline of counterterrorism and military activities that would be extremely valuable information to terrorists as they work to assess U.S. Government interests and capabilities.

16

F.  The records responsive to the
ACLU and New York Times requests

29. I have reviewed the records located by DOJ, including the one OLC opinion related to the Department of Defense that DOJ has confirmed the existence of, and I have determined that they contain information that is exempt from disclosure pursuant to FOIA Exemptions 1 and 3.  Although I am unable to provide detailed information about the records located by DOJ, including the dates, subject and authors, I can state that they contain information that is currently and properly classified pursuant to Executive Order 13526 at the Secret and Top Secret levels.  I have also determined that the records contain intelligence sources and methods information that falls squarely within the scope of Section 102A(i)(1) of the National Security Act, as amended, 50 U.S.C. § 403-1(i)(1), which protects intelligence sources and methods from disclosure.  Although the statute does not require an agency to identify and describe the harm to national security, the disclosure of the intelligence sources and methods contained in these documents could reasonably be expected to cause serious and exceptionally grave damage to the national security.  Disclosure of this information is prohibited by statute; having reviewed the material, I find it to be properly exempt from disclosure pursuant to Exemption 3 of the FOIA.  For more detailed justifications for the withholding of

17

the classified information contained in the documents located by
DOJ pursuant to Exemptions 1 and 3 I respectfully refer the
court to the classified ex parte declarations submitted
herewith.

30.   In reviewing DOJ's invocation of FOIA Exemptions 1 and
3 and its Glomar response and for the reasons stated herein and
in the attached classified declarations, I have determined that
DOJ's withholdings have not been made to conceal violations of
law, inefficiency, or administrative error; prevent
embarrassment to a person, organization, or agency; restrain
competition; or prevent or delay the release of information that
does not require protection in the interests of national
security. See Executive Order 13526, Sec. 1.7.

31.   Finally, ODNI and other Intelligence Community
employee names, phone numbers and email addresses are contained
in the unclassified records located by DOJ.   These names, phone
numbers and email addresses are exempt from release pursuant to
FOIA Exemption 6, which protects information the disclosure of
which would constitute a clearly unwarranted invasion of
personal privacy.   Given the nature of their work ODNI and
Intelligence Community employees have a heightened privacy
interest that far outweighs the minimal public interest in their

identities and email addresses.

Conclusion

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Executed this *20ʰ* day of June, 2012.


_____
John F. Hackett
Chief, Information and Data Management Group
Office of the Director of National Intelligence