UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NEW YORK TIMES COMPANY, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, et al., )<br>)<br>Defendants. )<br>AMERICAN CIVIL LIBERTIES UNION, et al., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>U.S. DEPARTMENT OF JUSTICE, et al., )<br>)<br>Defendants. ) | 11 Civ. 9336 (CM)<br><br><br><br>12 Civ. 794 (CM) |

## SECOND DECLARATION OF JOHN E. BIES

I, John E. Bies, declare as follows:

1. As explained in my prior declaration in this case, I am a Deputy Assistant Attorney General in the Office of Legal Counsel ("OLC") of the United States Department of Justice. My responsibilities include the supervision of OLC's responses to requests it receives under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). I submit this declaration pursuant to the Court's September 19, 2014 Order, in support of the Government's decision to withhold certain classified and privileged documents in OLC's possession, and in support of the Government's determination that such privileges have not been waived. These statements are based on my personal knowledge, on information provided to me by OLC attorneys and staff

1

working under my direction, and on information provided to me by others within the Executive Branch of the Government.

2. As explained more fully in paragraphs 8 through 17 of my first unclassified declaration in this case, *see* Declaration of John E. Bies, dated June 20, 2012 ("First Bies Decl."), in connection with these two consolidated cases, OLC received three FOIA requests:

    a. On June 24, 2010, OLC received a request dated June 11, 2010 from New York Times reporter Scott Shane seeking "copies of all Office of Legal Counsel opinions or memoranda since 2001 that address the legal status of targeted killing . . . of people suspected of ties to Al Qaeda or other terrorist groups by employees or contractors of the United States Government." *See* First Bies Decl. ¶ 8 & Ex. A (the "Shane Request");

    b. On October 7, 2011, OLC received a request dated the same day from New York Times reporter Charlie Savage seeking "a copy of all Office of Legal Counsel memorandums analyzing the circumstances under which it would be lawful for the United States armed forces or intelligence community assets to target for killing a United States citizen who is deemed to be a terrorist." *See id.* ¶ 10 & Ex. C (the "Savage Request"); and

    c. On October 24, 2011, OLC received a FOIA request dated October 19, 2011, from Nathan Freed Wessler on behalf of the American Civil Liberties Union Foundation (together with the American Civil Liberties Union, collectively hereinafter the "ACLU"), requesting *inter alia* all records "pertaining to the legal basis in domestic, foreign, and international law upon which U.S.

citizens can be subjected to targeted killings." *See id.* ¶ 14 & Ex. E (the "ACLU Request").

3. As explained more fully in paragraphs 18 through 28 of my unclassified declaration dated June 20, 2012, OLC conducted a search for records responsive to the New York Times and ACLU FOIA requests.

4. As described in paragraphs 23 to 28 and 38 of my June 20, 2012 public declaration, in addition to the unclassified documents discussed in that declaration, OLC searched classified electronic and paper files for documents responsive to the American Civil Liberties Union ("ACLU") request, both by reviewing secure locations identified by OLC attorneys as locations that potentially might contain responsive documents, and by running key word searches on classified electronic mail systems.

5. As a result of that search, OLC located documents responsive to the ACLU request that are either classified or protected from disclosure under FOIA by statute. As explained in my June 20, 2012 classified declaration, OLC determined that all but two of these documents are exempt from disclosure under FOIA pursuant to Exemption Five, 5 U.S.C. § 552(b)(5), which exempts from disclosure documents or information normally privileged in the civil discovery context, including documents or information protected by the deliberative process and attorney-client privileges. Because OLC had been informed that disclosing additional information about the number or nature of these responsive records could tend to reveal information that was exempt because it was classified or protected from disclosure by statute, OLC did not provide such information in its public response to the ACLU's FOIA request, but instead provided a no-number, no-list response with regard to these responsive documents. On June 20, 2012, I provided the Court with classified and unclassified declarations supporting the

decision to withhold these documents pursuant to Exemption Five. In order to aid the Court's understanding of the issues before it, my classified declaration was also accompanied by a classified index of the documents responsive to the ACLU request but subject to the Government's no-number, no-list response.

6. Also on June 20, 2012, the Government filed declarations in support of the decision to withhold these documents, as well as additional information relating to the number and nature of these documents, pursuant to FOIA Exemptions One and/or Three, 5 U.S.C. § 552(b)(1) & (3).

7. I understand that the Second Circuit panel's June 23, 2014 opinion concluded that subsequent to the Court's January 2013 decision on summary judgment in favor of the Government, as a result of certain public statements and the release in February 2013 of a draft Department of Justice white paper, titled "Lawfulness of a Lethal Operation Directed Against a U.S. Citizen Who Is a Senior Operational Leader of Al-Qa'ida or An Associated Force," dated November 8, 2011 (the "draft white paper"), a waiver of applicable privileges occurred as to certain portions of the legal analysis contained in one of these responsive documents, the July 16, 2010 memorandum from David J. Barron, the Acting Assistant Attorney General of OLC, to the Attorney General, which has been referred to during this litigation as the "OLC-DoD Memorandum," and which is identified in OLC's classified index of documents responsive to the ACLU request as Document 5.

8. Pursuant to the Court's July 9, 2014 Order, the Government on August 15, 2014 submitted the outstanding documents responsive to the New York Times requests to the Court for *in camera* review. My second classified declaration, filed with those documents, explains why they remain privileged and exempt from disclosure. I understand that, in its Order dated

September 30, 2014, the Court resolved the status of the outstanding documents responsive to the New York Times requests.[1]

9. The Court's September 5, 2014 Order directed Plaintiffs to identify the documents they seek from OLC's redacted index. On September 19, 2014, pursuant to that Order, the ACLU indicated that it is challenging the withholding of all listed documents except those identified on the OLC index as Documents 113, 116, 123 to 143, and 148 to 242. In addition, I understand from a subsequent e-mail communication between the ACLU and the government's counsel that the ACLU has agreed to exclude documents consisting of e-mails that do not contain attachments. Based on this understanding, we have identified Documents 12, 14 to 39, 41 to 45, 47 to 49, 51 to 53, 55, 56, 85, 86, 104, 105, 107 to 109, 111, 112, 115, 259, 261, 266, and 267, which are e-mails containing interagency legal deliberations that do not have attachments, as documents that the ACLU is no longer seeking. Thus, taken together, I understand that the ACLU is not challenging the withholding of Documents 12, 14 to 39, 41 to 45, 47 to 49, 51 to 53, 55, 56, 85, 86, 104, 105, 107 to 109, 111 to 113, 115, 116, 123 to 143, 148 to 242, 259, 261, 266, and 267. I have attached as Exhibit A a copy of the OLC index that was provided to Plaintiffs after being redacted pursuant to the Second Circuit's orders, revised to reflect only those entries for which I understand that the ACLU continues to challenge the underlying withholding.

10. Also pursuant to that Order, the Government today submits a legal memorandum and declarations in support of those withholdings which the ACLU has indicated that it intends to challenge. I am submitting this unclassified declaration in support of the conclusion that the documents whose withholdings the ACLU challenges are exempt from disclosure pursuant to

---

[1] It is my understanding that the government received this classified order on October 2, 2014 and that it is currently undergoing a classification review.

FOIA Exemption Five, 5 U.S.C. § 552(b)(5). Because of the classified and privileged nature of the documents at issue, I am also submitting an ex parte, in camera declaration in further support of that conclusion. I understand that the Government is filing additional classified *ex parte* declarations in support of the conclusion that most of the challenged documents are also exempt from disclosure pursuant to Exemptions One and/or Three of FOIA, 5 U.S.C. § 552(b)(1), (3).

## *The Documents at Issue*

11. I am personally familiar with the OLC documents whose withholding the ACLU has challenged.

12. These documents include:

   a. Predecisional OLC and/or Department of Justice legal advice documents (see, e.g., Documents 4 and 5);

   b. Internal Executive Branch documents reflecting predecisional OLC and/or Department of Justice legal advice;

   c. Internal and confidential Executive Branch documents conveyed to OLC for the purpose of requesting or obtaining confidential legal advice, and including privileged and/or classified factual information potentially relevant to the request for legal advice (see, e.g., Document 75);

   d. Internal Executive Branch legal deliberations (see, e.g., Document 7);

   e. Internal OLC attorney work product, such as draft OLC legal analysis or excerpts of draft legal analysis, generated during the preparation of OLC advice, which often include confidential and classified factual information provided to OLC in connection with a request for legal advice, and other more informal internal attorney work product generated during the preparation of

6

OLC advice, such as preliminary outlines of legal analysis or questions to consider and handwritten notes, either standing alone or in the margins of client communications or drafts of advice, some of which also include confidential and classified factual information provided to OLC in connection with a request for legal advice (see, e.g., Documents 50, 120 to 122, 144 to 147, 243, 269, and 270);

f. Classified and/or privileged factual information provided to OLC in connection with a request for legal advice, including input and comments relating to draft factual sections of draft legal advice (see, e.g., Documents 57-66, 68-71, 73, and 74); and

g. Classified legal analyses prepared for oversight purposes (see, e.g., Document 9).

13. All but two of these documents would be protected from disclosure in civil litigation discovery because of the applicability of one or more privileges. Accordingly, they are properly withheld from disclosure under FOIA pursuant to Exemption Five, 5 U.S.C. § 552(b)(5). These privileges include the deliberative process privilege and the attorney-client privilege.

14. Following the Second Circuit panel's opinion and the associated disclosures, I understand that the Government conducted a classification review of Document 9 in connection with a separate FOIA matter in litigation with a different requester, and following that review, a redacted version of Document 9 has been provided to the ACLU. Document 8 and the redacted portions of Document 9 are not being withheld pursuant to Exemption Five, but are being

withheld only pursuant to Exemptions One and Three, 5 U.S.C. § 552(b)(1), (3), for reasons stated in classified declarations being submitted today.

15. In addition, certain documents listed on the classified OLC index are also responsive to the New York Times requests. Although it is my understanding that the status of these documents was resolved by the Court's September 30, 2014 Order, I understand from the ACLU's September 19, 2014 submission to the Court that it may intend to challenge the withholdings and redactions of these documents.

16. Document 5 is the July 16, 2010 memorandum. Although it is my understanding that the status of this memorandum was fully resolved by the Second Circuit panel's June 23, 2014 opinion, I understand from the ACLU's September 19, 2014 submission to the Court that it may intend to challenge the withholding of portions of Document 5 redacted consistent with the Second Circuit's opinion.

**Applicable Privileges**

17. As explained below, the withheld records challenged by the ACLU consist primarily of records conveyed in the course of preparing confidential, predecisional OLC legal advice to assist Executive Branch clients in making policy decisions, or memorializing such advice. Accordingly, such records are covered by the deliberative process and/or attorney-client privileges, and are therefore exempt from disclosure under FOIA Exemption Five, unless those privileges have been waived.

18. The deliberative process privilege protects documents that are (a) predecisional, in that they were generated prior to decisions or potential decisions regarding contemplated future counterterrorism operations; and (b) deliberative, in that they contain, reflect, or reveal

discussions, proposals, and the "give and take" exchanges that characterize the government's deliberative processes.

19. Except as noted in paragraph 14, the documents sought by the ACLU are protected by the deliberative process privilege. They are predecisional, in that they were generated prior to contemplated Executive Branch policy decisions. They are deliberative, in that they contain, reflect, or reveal discussions, proposals, and the "give and take" exchanges that characterize the government's deliberative processes. Requiring disclosure of these documents would undermine the deliberative processes of the government and chill the candid and frank communication necessary for effective governmental decisionmaking. It is essential to OLC's mission and the deliberative processes of the Executive Branch that the development of OLC's considered legal advice not be inhibited by concerns about compelled public disclosure of predecisional matters, including factual information necessary to develop accurate and relevant legal advice, and draft analyses reflecting preliminary thoughts and ideas. Protecting the challenged withholdings from compelled disclosure is critical to ensuring that Executive Branch attorneys will be able to examine relevant facts and analysis, and draft and vet legal arguments and theories thoroughly, candidly, effectively, and in writing, and to ensuring that Executive Branch officials will seek legal advice from OLC and the Department of Justice on sensitive matters.

20. The attorney-client privilege protects documents that contain or reflect confidential legal advice provided by an attorney to the client, and confidential client requests for legal advice and other confidential communications and facts conveyed by the client to the attorney for the purpose of receiving legal advice.

21.     Except as noted in paragraph 14, the documents sought by the ACLU are protected by the attorney-client privilege. Many of the documents at issue contain legal advice or drafts of legal advice that was ultimately communicated in confidence from OLC to Executive Branch clients. In addition, the existence and content of some of the documents may reflect the privileged fact that a client requested confidential legal advice on a particular subject. Many of the documents at issue also contain factual material that was communicated in confidence by Executive Branch clients to OLC for the purpose of obtaining confidential legal advice. Having been asked to provide legal advice, OLC attorneys stood in a special relationship of trust with their Executive Branch clients. Just as disclosure of client confidences in the course of seeking legal advice would seriously disrupt the relationship of trust so critical when attorneys formulate legal advice to their clients, so too would disclosure of the legal advice itself undermine that trust.

22.     In addition, the challenged withholdings also include one or more records covered by the presidential communications privilege, which protects confidential communications that relate to presidential decisionmaking and involve the President or his senior advisors. The privilege protects both the advice or recommendations conveyed to the President by his advisers and communications among those presidential advisers made in the course of formulating such advice or recommendations, and direct, confidential communications from the President to senior officials on sensitive topics where disclosure would inhibit the President's ability to engage in effective communications and decisionmaking.

### Loss of Applicable Privileges

23.     It is my understanding, as explained more fully below, applying the Second Circuit's reasoning as I understand it, the Executive Branch has not waived applicable privileges

with respect to either the legal advice or the factual material contained in the challenged withholdings, which therefore remain exempt from disclosure pursuant to Exemption Five, 5 U.S.C. § 552(b)(5).

24. I understand that the Second Circuit panel found that a waiver occurred with respect to certain portions of the legal analysis contained in an OLC opinion. My understanding is that the Second Circuit panel reached this conclusion primarily due to the release of a draft Department of Justice white paper in February 2013 containing some legal analysis similar to the OLC opinion at issue, and also due to certain public statements officially acknowledging the identity of the relevant target and the existence of relevant OLC advice. Given the materials that formed the basis for the panel's finding of waiver and official acknowledgement, in considering how to apply that finding of waiver to other documents, OLC understood the waiver found by the Second Circuit panel to apply only to legal analysis embodied in a final OLC legal advice document, such as an OLC opinion, where the analysis is the same as or closely related to legal analysis contained in the draft white paper, and where the target at issue has been officially acknowledged by the Government. As I will describe in greater detail, I do not believe that this standard has been satisfied with respect to any of the documents the ACLU now seeks.

25. To begin, the Second Circuit panel indicated that its finding of waiver did not extend to privileged and/or classified factual information provided by clients in the course of seeking confidential OLC legal advice. The Second Circuit panel recognized that this confidential factual material remains exempt from disclosure, and its opinion permitted the redaction, in its entirety, of the section of the July 16, 2010 memorandum containing factual material. Applying the same principle, I understand that all privileged and/or classified factual

material contained in the challenged withholdings, and all documents consisting entirely of privileged and/or classified factual material, remain exempt from disclosure.

26.     Nor do I understand the Second Circuit to have found that applicable privileges have been waived with respect to confidential and classified communications from clients made in the course of requesting or obtaining OLC legal advice. These communications are deliberative and predecisional components not only of the Executive Branch policymaking process, but also of OLC's own internal deliberative process, such as OLC's internal deliberative process that resulted in the July 16, 2010 memorandum. In other words, these documents are predecisional, deliberative communications that OLC considers in the course of preparing its own final legal advice—legal advice that is itself a predecisional, deliberative input to an Executive Branch policymaking process. Even if waiver may have occurred as to portions of OLC opinions containing legal analysis that is the same as or closely related to legal analysis in the draft white paper, and that pertains to an officially acknowledged potential target, the waiver found by the Second Circuit panel did not extend to OLC's own internal deliberative process, of which confidential requests for legal advice are a part, such as related requests for legal advice, nor would it extend to separate and distinct deliberations from the one in issue here.

27.     Likewise, I do not understand the waiver found by the Second Circuit to extend to other confidential and classified deliberative materials, such as the interagency exchange of legal views and arguments. The Second Circuit panel's analysis focused on the effect the February 2013 release of the draft Department of Justice white paper and certain other public statements regarding relevant OLC legal analysis had on the privileged status of certain final OLC legal advice. I am aware of no suggestion in the panel's opinion or from review of the materials on which the panel relied that any waiver occurred with respect to other aspects of the

normal predecisional interagency exchange of legal views and arguments. Moreover, to the extent that any confidential and classified deliberative materials in issue pertained to separate decisionmaking processes than that for which the Second Circuit panel found a waiver to have occurred, that fact would form a separate, independently sufficient basis for concluding that no waiver occurred with respect to such documents.

28. Nor do I understand the Second Circuit to have found that applicable privileges have been waived with respect to OLC drafts, notes, and outlines containing legal thoughts, ideas, theories, and preliminary analysis. As discussed above, these notes, drafts, and outlines are part of OLC's internal deliberative process, to which the waiver found by the Second Circuit panel did not extend. Moreover, I understand the Second Circuit panel to have found a waiver with respect to certain final OLC advice relating to the lawfulness of using lethal force against al-Aulaqi in certain circumstances, and to the extent that any of the notes, drafts, and outlines the ACLU seeks pertain to deliberative processes separate and distinct from that deliberative process, that fact forms a separate, independently sufficient basis for concluding that no waiver occurred with respect to such documents. In addition, in considering how to apply the Second Circuit's finding of wavier when processing other documents, it was OLC's understanding that the mere fact that some notes or a draft or outline contain language or analysis that ultimately winds up in a final, formal OLC opinion does not mean that there is any waiver of applicable privileges over the draft document, just as the use of language derived from a law clerk's bench memo in a judicial opinion does not effect a waiver of privileges applicable to the bench memo.

29. In addition, where one final OLC opinion or memorandum contains citations to other, previous OLC opinions or memoranda, or contain discussions that reflect the deliberations in such other memoranda, I do not understand the Second Circuit to have found that applicable

13

privileges have been waived with respect to references to the date, title, and recipient of or analysis contained in other nonpublic OLC opinions and memoranda that simply happen to be cited or discussed in any of the challenged withholdings. Even if the legal analysis in a final OLC opinion or memorandum itself has been waived, any citations and references to other OLC legal advice relate to entirely independent deliberative processes and reflect the content of confidential legal advice provided to OLC's Executive Branch clients in other contexts would not have been waived unless there is a separate basis for finding such a waiver. Neither the draft white paper nor the public statements relied upon by the Second Circuit refer to or otherwise disclose the contents any other confidential legal memoranda that happen to be cited in challenged withholdings, and I am aware of no basis for concluding that there has been any waiver of applicable privileges with respect to this separate OLC legal advice.

30. Finally, in considering how to apply the Second Circuit's finding of waiver to other documents, it has been OLC's understanding that a waiver in the context of one deliberative decisionmaking process does not effect a waiver regarding the existence or content of other, separate deliberations or for other undisclosed attorney-client confidences. Thus, OLC routinely cites to its prior published opinions in later memoranda providing confidential legal advice, and I do not believe that there is a waiver regarding such a discussion of a prior published opinion's analysis in the context of subsequent legal advice by virtue of the publication of the initial opinion. Similarly, OLC often confronts similar legal questions in the context of separate and distinct deliberative processes. I do not understand that a waiver regarding the content of OLC's analysis of a particular legal issue in the context of one deliberative process waives the existence or the content of a similar analysis in other contexts. Based on my experience at OLC, a contrary rule would have a substantial chilling effect on the

willingness of OLC's Executive Branch clients to seek confidential OLC legal advice in the many contexts in which such a waiver might arise; finding waiver in these circumstances could also deter OLC from providing written legal advice and would present incentives that could harm the robust presentation of all competing considerations in the drafting of written legal advice in such contexts, to the detriment of the quality of the Executive Branch's policy deliberations and the rule of law.

31. In my view, the government has also not waived any applicable privileges with respect to any remaining portions of the challenged withholdings. I will address any additional issues regarding possible waiver in the context of my discussion of each category of document below.

### Documents Reflecting Legal Advice

32. It is my understanding that, apart from the withholding of the redacted portions of Document 5, which was upheld by the Second Circuit's June 23, 2014 opinion, the Court's review and September 30, 2014 Order has fully resolved the status of any OLC legal memoranda providing advice responsive to the ACLU's request, including the redacted portions of Document 4. In any event, confidential legal advice provided by OLC or the Department of Justice is quintessential material covered by the deliberative process and attorney-client privileges.

33. Documents consisting of or containing legal advice provided to Executive Branch decisionmakers in connection with their policymaking deliberations fall squarely within the deliberative process privilege because they would be both predecisional and deliberative. Such documents are predecisional because they were prepared in connection with contemplated Executive Branch policy decisions. They are deliberative because they constituted advice used