**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

American Civil Liberties Union and The
American Civil Liberties Union Foundation

      Plaintiffs,

  -v-

U.S. Department of Justice, including its
component the Office of Legal Counsel, U.S.
Department of Defense, including its component
U.S. Special Operations Command, and Central
Intelligence Agency

      Defendants.

---------------------------------------------------------------- X

12-CV-00794-CM

**REPLY MEMORANDUM IN
SUPPORTS OF PLAINTIFFS' CROSS-
MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION
TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO
DOCUMENTS WITHHELD BY CIA
AND DOD**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I.      The agencies construe the official-acknowledgment doctrine too narrowly. ..................... 1

II.     The agencies have not justified the withholding of legal analysis.................................... 3

III.    The agencies' *Glomar* response is unlawful. ....................................................... 4

IV.     The Court should review the records *in camera*. ................................................... 5

CONCLUSION ........................................................................................................ 7

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. CIA*,
   710 F.3d 422 (D.C. Cir. 2013)................................................................................4, 5

*ACLU v. DOD*,
   389 F. Supp. 2d 547 (S.D.N.Y. 2005).........................................................................6

*Department of the Navy v. Egan*,
   484 U.S. 518 (1988)....................................................................................................6

*Grand Cent. P'ship v. Cuomo*,
   166 F.3d 473 (2d Cir. 1999).......................................................................................3

*Hayden v. NSA*,
   608 F.2d 1381 (D.C. Cir. 1979).............................................................................3, 4

*Lawyers Comm. for Human Rights v. Immigration & Naturalization Serv.*,
   721 F. Supp. 552 (S.D.N.Y. 1989).............................................................................3

*N.Y. Times v. DOJ*,
   756 F.3d .100 (2d Cir. 2014)..................................................................................1, 6

*Phillippi v. CIA*,
   546 F.2d 1009 (D.C. Cir. 1976)..................................................................................3

*Stillman v. CIA*,
   319 F.3d 546 (D.C. Cir. 2003).....................................................................................6

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973).................................................................................6, 7

*Wilner v. NSA*,
   592 F.3d 60 (2d Cir. 2009)..........................................................................................5

*Wilson v. CIA*,
   586 F.3d 171 (2d Cir. 2009)....................................................................................1, 2

**Statutes**

18 U.S.C. § 956(a) ..............................................................................................................1, 2

Freedom of Information Act, 5 U.S.C. § 552(b) ("FOIA") ................................................2, 5, 6

**Other Authorities**

Senate Intelligence Comm., *Committee Study of the Central Intelligence Agency's Detention and Interrogation Program* (2014) ....................................................................6, 7

**INTRODUCTION**

Plaintiffs the American Civil Liberties Union and the American Civil Liberties Union Foundation (together, the "ACLU") submit this reply memorandum in further support of their cross-motion for summary judgment regarding records withheld by the Central Intelligence Agency ("CIA") and the Department of Defense ("DOD").

**ARGUMENT**

**I.     The agencies construe the official-acknowledgment doctrine too narrowly.**

The agencies contend that the withheld information does not meet the test of *Wilson v. CIA*, 586 F.3d 171, 186 (2d Cir. 2009), because it "is not as specific as the information previously released, does not match the information previously released, and was not made public through an official and documented disclosure." Dkt. 113 at 2-3. But this assertion is predicated on a misunderstanding of the official-acknowledgement test, *New York Times v. DOJ*, 756 F.3d 100, 119 (2d Cir. 2014), and is inconsistent with the government's own concessions in this litigation.

As Plaintiffs have explained, the Second Circuit's review of *Wilson* and its precedents led it to conclude that "official acknowledgement" can be established even where there is not "absolute identity" between the information that the government has disclosed and the information that is still being withheld.  *Id.* at 120. The Second Circuit concluded that the government waived its right to withhold portions of a memorandum discussing 18 U.S.C. § 956(a), even though the statute's role in the legal framework had not been disclosed by official, public disclosures of other, related statutes. *Id.* at 120 (observing that because the government had already disclosed the legal framework for the

program, the discussion of 18 U.S.C. § 956(a) in the OLC-DOD Memorandum did not

add to the risk).

Here, the agencies' contention that "the withheld information is not as specific as

the information previously released [and] does not match the information previously

disclosed" Dkt. 113 at 2-3, is insufficient to meet their burden under FOIA.  As Plaintiffs

have explained, the relevant question is whether the agency is withholding responsive

information that is "the same or closely related" to information disclosed by the

government in other contexts, not whether the information is identical. Dkt. 109 at 6.

Indeed, the government itself acknowledged as much in its earlier briefs in this litigation.

Dkt. 105 at 4 (conceding that official acknowledgment waives agency's right to withhold

"same or closely related" information but not to quintessentially deliberative materials).[1]

Moreover, even assuming, as the agencies contend, that the withheld information

"goes well beyond the disclosures identified either in the Second Circuit's decision or in

the sources cited by the ACLU," Dkt. 113 at 2, FOIA requires agencies to segregate and

disclose those portions of the withheld documents that constitute officially disclosed

information. The agencies have not done this here.  For example, even under a "rigid"

application of the *Wilson* test (*i.e.* even applying the formalistic and narrow test the

Second Circuit *rejected*), it is implausible that the entirety of the Panetta declaration is

properly withheld in light of the significant official disclosures since it was submitted in

2010 and the government's own representations concerning the substance of the

declaration. Dkt. 107 at 10.

---

[1] This Court has concluded that the Second Circuit determined, with respect to the OLC-
DOD memo, that "the Government has waived FOIA exemptions *only* to the extent of
legal analysis." Dkt. 111 at 1 (italics in original).  The ACLU has appealed this holding to
the Second Circuit.

**II.**     <u>**The agencies have not justified the withholding of legal analysis.**</u>

      The agencies appear to concede that legal analysis cannot be withheld in its own right under Exemptions 1 and 3, but contend that legal analysis here is so "intertwined" with properly protected information that it may be withheld. Dkt. 113 at 6. But the agencies have not provided evidence, beyond conclusory statements, for this proposition.

      To the extent that the agencies rely on *ex parte* declarations to justify the withholding of legal analysis—for example, to explain how the disclosure of legal analysis in the records would reveal other protected information—this reliance is inappropriate here. An agency's submissions must "contain *reasonable specificity* of detail rather than merely conclusory statements." *Grand Cent. P'ship v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (italics in original). While *in camera* declarations have been permitted in the national security context, courts have recognized that this procedure represents a significant compromise of the adversary process. *Hayden v. NSA*, 608 F.2d 1381, 1385 (D.C. Cir. 1979); *see, e.g.*, *Lawyers Comm. for Human Rights v. Immigration & Naturalization Serv.*, 721 F. Supp. 552, 568 (S.D.N.Y. 1989) ("Recognizing that plaintiffs will be unable to mount a complete adversarial argument without access to submitted affidavits, the Court will not examine *in camera* affidavits unless it is 'absolutely necessary.'" (quoting *Allen v. CIA*, 636 F.2d 1287, 1298 n.63 (D.C. Cir. 1980))).  Even where courts have permitted the government to submit *ex parte* declarations, they have required the government to first "create as complete a public record as is possible." *Phillippi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976).  Given the inadequacy of the agencies' public declarations, Plaintiffs are unable to meaningfully test the assertions regarding the relationship between withheld legal analysis and information

protected by Exemptions 1 and 3.  At the very least, the fact that the agencies' public

declarations are so generic provides an additional argument in favor of the Court's

conducting *in camera* review of the withheld documents.  *Hayden*, 608 F.2d at 1384.[2]

### III.     **The agencies' *Glomar* response is unlawful.**

The agencies defend their *Glomar* response by asserting that confirming the

existence of responsive records would disclose "whether or not U.S. government

personnel were aware of [Samir] Khan's or Abdulrahman al-Aulaqi's presence in the area

at the time of the strikes, made a 'decision' to kill Khan or Abdulrahman al-Aulaqi

specifically, or 'took measures' to avoid their deaths." Dkt. 113 at 4. The agencies are

incorrect. The mere listing of responsive records, with redactions appropriate to protect

legitimately withheld information—such as the extent of the government's knowledge, if

any, of the two individuals before the strike—would not disclose the information the

agencies seek to protect. As Plaintiffs have explained, the agencies' operational roles and

intelligence interests in the strikes have been officially acknowledged, and the

government has disclosed that it conducts both pre- and post-strike analysis of each strike.

Dkt. 109 at 13.  Given that the government has also acknowledged that Samir Khan and

Abdulrahman al-Aulaqi were killed by U.S. strikes, "it is neither logical nor plausible for

[the agencies] to maintain that it would reveal anything not already in the public domain

to say that the [agencies] 'at least have an intelligence interest,'" in the specific strikes at

issue in this request. *ACLU v. CIA*, 710 F.3d 422, 430 (D.C. Cir. 2013).

_____

[2] The agencies also contend that they have adequately justified their assertion of the
Exemption 5 privileges in their public and classified declarations. Plaintiffs have already
addressed these arguments. Dkt. 109 at 18-19.

4

Notably, the agencies do not even attempt to explain why a *Glomar* response is necessary or justified with respect to records produced *after* the strikes. As Plaintiffs have explained, the Attorney General's acknowledgment that Samir Khan and Abdulrahman al-Aulaqi were killed in U.S. drone strikes makes it clear that the government conducted after-the-fact analysis of the strikes in question. Dkt. 109 at 14.  Records of that analysis are responsive to Plaintiffs' request.[3] While the agencies may argue that the specific information contained in such records is protected under one of the statutory exemptions, for the purposes of a *Glomar* response, the agencies must establish that the existence of such agency records *vel non* is itself protected and unacknowledged. *Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009). The agencies have not established this here. *ACLU v. CIA*, 710 F.3d at 427 (*Glomar* response waived when "prior disclosure establishes the *existence* (or not) or records responsive to the FOIA request, regardless of whether the contents of records have been disclosed." (quoting *Marino v. DEA*, 685 F.3d 1076, 1081 (D.C. Cir. 2012))).

**IV.**   **The Court should review the records *in camera*.**

*In camera* review to determine whether the withheld records may be released in full or in part is appropriate here. First, as Plaintiffs have explained above and in their initial brief, the agencies' declarations are insufficient to meet their burden for withholding under the claimed exemptions. Dkt. 109 at  9, 15-18. Second, the agencies have made no meaningful effort to segregate releaseable information, even though the Second Circuit's opinion and the government's previous disclosures demonstrate that

---

[3] Contrary to the government's suggestion, Plaintiffs do not seek "documents pertaining to the lawfulness of drone strikes generally, or records generally addressing bystander casualties." Dkt. 113 at 3.  They seek only records relating to the specific strikes that killed Abdulrahman al-Aulaqi and Samir Khan.

segregation is possible. Third, the deference ordinarily accorded to the agencies'

declarations should not be accorded here because, as the Second Circuit held, the

government's previous withholding claims were not "logical or plausible." *N.Y. Times*,

756 F.3d at 120.  Fourth, Plaintiffs have substantially reduced the number of records they

seek in this request, and as a result the burden on the Court of conducting *in camera*

review would be limited. Dkt. 109 at 4-5.[4]

Finally, *in camera* review is warranted because a recent investigative report

published by the Senate Intelligence Committee makes clear that the CIA made serious

misrepresentations in justifying its invocation of the *Glomar* doctrine in another national-

security-related FOIA suit. The report reveals that the CIA prepared a "media campaign"

that contemplated "off the record disclosures" about the very issues that the agency

claimed were secret in *ACLU v. DOD*, 389 F. Supp. 2d 547, 563-565 (S.D.N.Y. 2005).

*See* Senate Intelligence Comm., *Committee Study of the Central Intelligence Agency's*

*Detention and Interrogation Program ("Executive Summary"),* 403 (2014) available at

http://www.intelligence.senate.gov/study2014.html. CIA personnel apparently recognized

the chasm between the agency's off-the-record disclosures to the press about the

---

[4] The agencies' contention that the appointment of a special master would raise
separation-of-powers concerns is unfounded. Dkt. 113 at 6-7.  The Court's discretion to
designate special masters in FOIA litigation is well established. *See, e.g.*, *Vaughn v.
Rosen,* 484 F.2d 820 (D.C. Cir. 1973). The appointment of a properly cleared special
master to manage and assist with the Court's review of responsive documents raises no
more constitutional concerns than the Court's use of law clerks. The agencies' citations to
*Stillman v. CIA*, 319 F.3d 546 (D.C. Cir. 2003) and *Department of the Navy v. Egan*, 484
U.S. 518 (1988) do not help them because those cases are factually inapposite.  *See Egan*,
484 U.S. at 527-31 (addressing whether administrative board had the statutory authority
to review the denial of a security clearance to a government employee, and not whether
court may appoint a special master in furtherance of its review of an agency's
withholdings under FOIA); *Stillman*, 319 F.3d at 547-49 (addressing the release of
classified information to plaintiff's counsel, not a special master appointed by the court).

interrogation program and the representations it was making in court. The Senate report cites an internal CIA communication in which one agency attorney expressed concern that "[o]ur *Glomar* figleaf is getting pretty thin." *Id.* at 405.  It also points to a second communication in which "another CIA attorney noted . . . 'the [legal] declaration I just wrote about the secrecy of the interrogation program [is] a work of fiction.'" *Id.*

## CONCLUSION

For the foregoing reasons, and the reasons set forth in the ACLU's memorandum of law in support of partial summary judgment, the Court should deny the agencies' motion for summary judgment and review the withheld records *in camera* to determine (i) which portions of the records must be released because they consist of information that has been officially acknowledged; and (ii) which portions must be released because they consist of legal analysis. In addition, the Plaintiffs respectfully request this Court to order the CIA and DOD to provide *Vaughn* indices in place of their *Glomar* response for records concerning Abdulrahman al-Aulaqi and Samir Khan.

| | |
|---|---|
| Dated:  January 9, 2015 | Respectfully submitted<br><br>DORSEY & WHITNEY LLP<br><br><br>By:  s/Michael Weinbeck<br>    Eric A.O. Ruzicka (*pro hac vice*)<br>     ruzicka.eric@dorsey.com<br>     Colin Wicker (*pro hac vice*)<br>     wicker.colin@dorsey.com<br>     Michael Weinbeck (*pro hac vice*)<br>     weinbeck.michael@dorsey.com<br>50 South Sixth Street, Suite 1500<br>Minneapolis, MN 55402-1498<br>(612) 340-2600<br>Fax: (612) 340-2868<br><br>Joshua Colangelo-Bryan<br>colangelo.bryan.josh@dorsey.com<br>51 West 52nd Street<br>New York, NY 10019-6119<br>(212) 415-9200<br><br>*Attorneys for Plaintiffs* |
| | AMERICAN CIVIL LIBERTIES UNION FOUNDATION<br><br>Jameel Jaffer<br>Hina Shamsi<br><br>125 Broad Street, 18th Floor<br>New York, NY 10004<br>(212) 549-2500<br>Fax: (212) 549-2654<br><br>*Attorneys for Plaintiffs* |